UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80089-CIV-MARRA/JOHNSON

KARL HIPPELE,

    Plaintiff,

vs.

PALM BEACH COUNTY BOARD OF
COUNTY COMMISSIONERS, et al.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT ARMOR CORRECTIONAL HEALTH SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the court upon defendant Armor Correctional Health Services, Inc.'s motion for summary judgment [DE # 59]. For the reasons given below, the court will grant defendant's motion.

### BACKGROUND

Plaintiff Karl Hippele ("Hippele") has brought this 42 U.S.C. 1983 and negligence action complaining about severe injuries he sustained while imprisoned at the Palm Beach County Jail (the "Jail"). The facts given below are drawn from the pleadings and record evidence and, in the resolution of the motion, have been viewed in the light most favorable to the plaintiff as the non-moving party. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

This case involves three defendants. The Sheriff of Palm Beach County is being sued in his official capacity as the "constitutional officer who . . . maintains, staffs, operates, and supervises the Palm Beach County Jail." *See* Second Am. Compl. ¶ 12. Armor Correctional

Health Services, Inc ("Armor"), the only party moving for summary judgment, is a private company that, on December 29, 2005, contracted with the Sheriff's Office to provide medical services to inmates at the Jail. Under the contract, Armor agreed to perform intake medical screening, to provide medical and mental health services, and to obtain and maintain accreditation from the American Correctional Association (the "ACA").[1] By its terms, the contract permitted subcontracting and delegation, and on April 13, 2006, Armor subcontracted its responsibility to provide mental health services to Geo Care, Inc. ("Geo"), another private company. Armor and Geo are being sued as private entities performing public functions that have traditionally been the exclusive prerogative of the state.

On January 11, 2007, Hippele was arrested for violating probation and taken to the Jail. At the jail, an employee of Armor administered a health intake screening of Hippele. During the interview, Hippele expressed depression over "losses in his personal life" and declared that he "wanted to die." All inmates who express suicidal ideations are housed in the mental health unit of the Jail for observation and treatment. Consequently, Hippele was taken to the mental health unit immediately.

The mental unit of the Jail was operated by Geo and the Sheriff. Geo, pursuant to the subcontract agreement, was responsible for providing mental health services to inmates in the mental health unit, and the Sheriff was responsible for providing security. Armor, by contrast, was not involved in the operation of the mental health unit, except when circumstances required

---

[1] "The ACA is a private, non-profit organization that administers a national accreditation program for all components of adult and juvenile corrections. The ACA offers a prison facility the opportunity to evaluate its facility against national standards, with the goal of remedying deficiencies and improving the quality of programs and services." *See Hester v. Morgan*, 52 F.App'x 220, 224 n.1 (6th Cir. 2002) (citing http://www.aca.org).

Armor personnel to respond to a medical emergency. Thus, once Hippele was placed in the mental health unit, Armor played no further role in overseeing or caring for him.

Upon his admission to the mental health unit, Hippele was required to remove his clothing and any other material that he could reasonably use to injure himself, and was given a paper robe to wear. Hippele was initially housed in a single cell, but was later transferred to a double cell, which he shared with an inmate, Cecil French ("French"). French was also on suicide watch. The complaint alleges that French was "a sexual predator with violent propensities." *See* Second Am. Compl.¶ 17. The decision to transfer Hippele to a double cell was made by Geo or the Sheriff, or perhaps by both.

Some time after Hippele was placed in the mental health unit, he was severely beaten and sexually assaulted. As a result of the attack, he sustained "brain injury, a subdural hematoma, cognitive and psychic injuries, fractured ribs, bruising to the arms, wrists and legs, injury to his groin and anal area, sexual assault, and many other injuries." *See* Second Am. Compl. ¶ 25. Hippele was taken by helicopter to a local hospital, where he received treatment for his injuries while he remained in a coma for approximately two months.

After Hippele came out of the coma, he had trouble remembering the events that caused his injuries. At his deposition, Hippele remembered being attacked, beaten, and sexually assaulted by French. He also remembered being removed, after the attack, from the double cell he shared with French and placed in an empty, single cell, where he was left without medical attention for approximately one day. He does not, however, remember whether other actors or events contributed to his injuries.

On January 23, 2009, Hippele filed this action against the defendants. The second amended complaint alleges that Hippele's injuries were caused by one, or some combination of,

3

three factual scenarios.  For each scenario, Hippele asserts a claim under § 1983 and a negligence claim under Florida law.  The first scenario (Counts VII and VIII) alleges that Hippele was physically and sexually assaulted by French, his cellmate.  The complaint asserts that Armor acted with deliberate indifference to the welfare of Hippele by housing him with French, because Armor "knew or reasonably should know that French was a sexual predator with violent propensities." *See* Second Am. Compl. ¶ 97.  The second scenario (Counts IX and X) alleges that prison guards moved Hippele from the cell he shared with French, and then placed him in a restraint chair and beat him without justification.  The complaint asserts that a custom or policy of Armor lead its employees to believe that such action was permissible.  The third scenario (Counts XI and XII) alleges that Armor failed "to watch and keep vigilance and oversight over inmates on suicide watch . . . to prevent them from inflicting harm upon themselves." *See* Second Am. Compl. ¶ 130.  Due to that omission, Hippele, who was suicidal at the time, allegedly inflicted the injuries upon himself.

## JURISDICTION

This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the Plaintiff's complaint raises claims under 42 U.S.C. § 1983.  The court also possesses supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Palm Beach County in the Southern District of Florida.

## DISCUSSION

### A.     *Standard on Motion for Summary Judgment*

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of meeting this exacting standard.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

When the nonmoving party bears the burden of proof at trial, the moving party is not required  to "support its motion with affidavits or other similar materials negating the opponent's claim" to demonstrate the absense of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Instead, the moving party may "'show[]' – that is, point[] out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 324.  However, it "is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Rather, "the moving party must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial."  *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 n.19 (11th Cir. 1991).

If the moving party shows the absence of a triable issue of fact, the burden shifts to the nonmoving party to come forward with evidence of each essential element of his claims, such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

    B.    *Armor's Motion for Summary Judgment*

        1.    *§ 1983 Claims*

Counts VII, IX, and XI of the second amended complaint assert claims against Armor pursuant to § 1983. Armor argues that summary judgment should be entered on those counts, because none of its policies or customs caused the alleged constitutional violations for which Hippele sues. Further, Armor argues that summary judgment should be entered on counts IX and XI, because there is insufficient record evidence to support the claims that Hippele was placed in a restraint chair and beaten and that he inflicted the injuries upon himself.

### *a.*     *Policy or Custom Requirement*

To prevail on a § 1983 claim, a plaintiff must prove that (1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law. *See U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001). "When a private entity like [Armor] contracts with a [governmental entity] to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state [and] becomes the functional equivalent of the" governmental entity. *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). Consequently, "the obligations of the eighth amendment attach to" Armor, which acts "under color of state law for the purposes of section 1983." *Howell v. Evans*, 922 F.2d 712, 723-24 (11th Cir. 1991). *vacated as settled*, 931 F.2d 711, *reinstated by unpublished order* (11th Cir. June 24, 1991).

The Supreme Court has held that state actors cannot be liable for constitutional torts under § 1983 on theories of respondeat superior or vicarious liability, but can be liable "when execution of" a municipality's "policy or custom inflicts the injury." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). Although *Monell* involved municipal corporations, the Eleventh Circuit has extended its holding to private corporations acting under color of state law. *See Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992) (remarking that "every circuit court to consider the issue has extended the holding [of Monell] to private corporations as well"); *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (cataloguing circuit court cases applying Monell to private entities). Thus, for Hippele to establish liability against Armor "he must do more than assert respondeat superior; [he] must show causation." *Howell*, 922 F.2d at 724.

Hippele contends that, by virtue of its contract with the Sheriff's Office to provide medical care at the Jail, "Armor had a [sic] independent and non-delegable duty to keep Plaintiff safe" and thus is liable for any constitutional violations caused by a policy or custom or Geo. Hippele bases his argument on *Ancata v. Prison Health Services*, 769 F.2d 700 (11th Cir. 1985). That case involved a § 1983 claim for deliberate indifference against, among others, Broward County and a private entity under contract with the country to provide medical services to inmates. *Id.* at 701-02. The district court dismissed the claims against Broward County as being based on respondeat superior. *Id.* at 704. On appeal, the Eleventh Circuit held that local governments have a non-delagable duty, under the United States Constitution and state law, to provide medical care to inmates and, thus, local governments cannot avoid liability under § 1983 by contracting with private entities to fulfill that duty. *Id.* at 705. Consequently, Broward County "itself remain[ed] liable for any constitutional deprivations caused by the policies or customs of the" private entity, not under a theory of respondeat superior, but because the acts, policies, and customs of the private entity became official policy of the County. *Id.*

*Ancata's* reasoning does not apply here. Unlike the defendant in *Ancata*, Armor is not a governmental entity and is not obligated under the Constitution to provide medical care for inmates at the Jail; rather, Armor is a private entity which contracted, among other things, to provide mental health care at the Jail and then subcontracted that responsibility to Geo. Based on the contractual agreements, the duty to provide mental health services at the Jail belonged to the Sheriff, as the governmental official responsible for operating the Jail, and Geo, pursuant to the subcontract agreement, but not Armor.

This case is more analogous to *Howell v. Evans*. 922 F.2d 712 (11th Cir. 1991). In *Howell*, the representative of the estate of a deceased inmate brought a § 1983 action against,

8

among others, a private entity under contract with the Georgia Department of Corrections to provide medical services to inmates and two doctors who contracted with the private entity to provide those services. The district court found that the private entity "was liable under § 1983 because [the private entity] had a contractual duty to perform services, it hired [doctors] to perform these duties, and [the doctors'] acts were the acts of [the private entity]." *Id.* at 724 n.12. On appeal, the Eleventh Circuit stated that, "to the extent that [the district court's] rationale bases liability on respondeat superior, it was incorrect. Respondeat superior cannot be the basis for § 1983 liability." *Id.* To establish liability under § 1983, the plaintiff had to prove that the private entity "was directly involved in the violation, or that a policy or custom of [it] led to the violation." *Id.* at 724.

Therefore, while the policies or customs of Geo may represent official policy of the Sheriff, those policies or customs cannot be imputed to Armor to establish liability under § 1983. To establish liability against Armor, Hippele must show that a policy or custom of Armor caused his injuries. In other words, if the record shows that the only basis upon which Armor could be liable for Hippele's injuries is respondeat superior, then Hippele's § 1983 claims must fail. The court, viewing the facts in the light most favorable to Hippele, will consider each § 1983 claim in turn.

      b. *Count VII*

In Count VII, Hippele alleges that Armor acted with deliberate indifference to his welfare by double celling him with French, a violent sexual predator. Hippele contends that Armor's housing policies failed to comply with ACA standards, which require that single cells be provided for "inmates with severe medical disabilities," inmates who are "sexual predators," and

"inmates likely to be victimized by others."[2] To establish deliberate indifference, Hippele must show three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence. *See Goebert v. Lee County*, 510 F.3d 1312, 1326-27 (11th Cir. 2007).

The record in this case demonstrates that Armor played no role in the decision to house Hippele with French. Geo or the Sheriff, or perhaps both, made the initial decision to place Hippele in a single cell and the later decision to transfer him to a cell with French. Armor cannot be held vicariously liable for Geo's or the Sheriff's decision; Armor can be liable only if its customs or policies caused the alleged constitutional violation.

Hippele argues that Armor had a policy of failing to properly assess, during intake screening, whether an inmate required a single cell under ACA regulations. This argument is flawed, in that it seeks to impose liability on Armor for failing to do something it was not responsible for doing. Although Armor was responsible for determining whether an inmate should be placed in the mental health unit, it was not responsible for determining or recommending whether an inmate required special housing accommodations within the unit. Rather, Geo and the Sheriff oversaw the mental health block, and only Geo and the Sheriff could make decisions regarding housing. Because no policy or custom of Armor caused Hippele to be double celled with French, summary judgment must be entered for Armor on Count VIII.

---

[2] The court notes that, although ACA standards "may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question." *Bell v. Wolfish*, 441 U.S. 520, 543 (1979). Hippele cites to no case law suggesting that the failure to evaluate, during intake, whether an inmate falls into one of the above-mentioned categories amounts to deliberate indifference, nor is the court aware of any. Further, the ACA standard in question is non-mandatory and, despite the alleged failure to comply with the standard, the Jail has been accredited by the ACA. Nonetheless, the court assumes, without deciding, that the failure to comply with the standard at issue can violate of the Eight Amendment.

Hippele's complaint also alleges that Armor was deliberately indifferent because it did not properly train or supervise Geo. Specifically, Hippele argues that Armor failed to fulfill its contractual obligation to ensure that Geo complied with ACA regulations. The failure to train or supervise can constitute a policy sufficient to trigger liability under § 1983, but only in limited circumstances, such as when that failure "amounts to deliberate indifference to the rights of persons with whom the [governmental entity may] come into contact." *City of Canton*, 489 U.S. 378, 388 (1989). To establish deliberate indifference, Hippele "must present some evidence that the [Armor] knew of a need to train and/or supervise in a particular area and [Armor] made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

Armor argues, and the court agrees, that there is no evidence that Armor knew that Geo needed additional training or supervision. The record shows that, in accordance with its contractual obligations, Armor and Geo had obtained and maintained accreditation by the ACA. Hippele argues that Armor knew of a need to train and supervise because an ACA audit conducted in 2005 found that the regulation at issue was not being followed at the Jail.[3] This audit, however, was conducted before Armor and Geo started providing services at the Jail, and there is no evidence that Armor was ever apprised of the audit's findings. Further, even if Armor was apprised of a need to supervise or train, there is no evidence that Armor deliberately chose not to provide it. Consequently, Armor cannot be liable for failing to properly train or supervise Geo.

---

[3] Despite that finding, the Jail was accredited by the ACA. The 2005 audit indicates that the regulation at issue was non-mandatory.

     c.  Count IX

Count IX of the second amended complaint alleges that Armor employees restrained and beat Hippele without justification. To prove an Eight Amendment claim for excessive force, Hippele must prove that "force was applied maliciously and sadistically for the very purpose of causing harm." *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).

A review of the record reveals that summary judgment must be granted for Armor on this claim for two reasons. First, Armor employed no personnel in the medical health unit and, thus, neither its employees nor its customs or policies played a role in the alleged constitutional violation. Because the record reveals no wrongful action or policy on the part of Armor, summary judgment must be entered for Armor.

Second, the record lacks sufficient evidence to allow a reasonable jury to find that prison guards beat Hippele. During his deposition, Hippele remembered being beaten and sexually assaulted by French. When asked whether he remembered being placed in a restraint chair and beaten by guards, however, Hippele conceded that he had no memories of such events:

  Q.  Are you claiming that you were injured when you were placed in a restraint chair and beaten by guards?

  A.  I don't remember that. Though if it happened, I'm sure it did.

  Q.  Are you claiming it happened?

  A.  I'm not claiming anything. My mind has got a terrible foggy memory when I was going through that time.

(Hippele Depo. p. 68-69).

To create a genuine issue of material fact, Hippele argues that the record demonstrates that Hippele was placed in a restraint chair. Hippele cites an incident report, which observed

that Hippele had sustained bruising around his ankles and wrists, and French's deposition, in which French recalled seeing a restraint chair in front of Hippele's cell.

This evidence is insufficient to support Hippele's claim. There is simply no record evidence that Hippele was beaten by any guards at the jail. While there is circumstantial evidence that Hippele may have been placed in a restraint chair, it is unclear whether Hippele is claiming that the use of the restraint chair alone constituted deliberate indifference. If he is, the grant of summary judgment would still be appropriate, because there is no evidence that the use of the restraint chair caused the injuries for which he sues. Nor is there evidence that the restraint chair was used "maliciously and sadistically for the very purpose of causing harm." *See Campbell*, 169 F.3d at 1374. Evidence that a suicidal inmate might have been placed in a restraint chair is not, without more, enough to establish a violation of the Eight Amendment. *See Estate of Max G. Cole*, 94 F.3d 254, 262 (7th Cir. 1996) (holding that an inmate's right to be free from restraints "end[s] at the point at which his freedom of restraint posed the substantial risk that he would seriously injure himself."). Absent evidence that Hippele was placed in a restraint chair as punishment or to cause harm, the court must grant summary judgment for Armor.

### d. Count XI

Count XI of the second amended complaint alleges that Armor failed to closely monitor Hippele while he was in the mental health unit, allowing him to inflict injuries upon himself. To prevail on this claim, Hippele must show that Armor "displayed 'deliberate indifference' to the prisoner's taking of his own life" or injuring himself. *See Edwards v. Gilbert*, 867 F.2d 1271, 1274-75 (11th Cir. 1989).

A review of the record reveals that summary judgment must be granted for Armor on this claim. Armor was not responsible for watching or caring for inmates in the mental health unit;

that responsibility belonged to either Geo or the Sheriff. Therefore, no wrongful action or policy on the part of Armor caused the alleged constitutional violation.

Moreover, the record contains insufficient evidence to allow a reasonable jury to find that Hippele himself caused the severe injuries for which he sues. Notably, during his deposition, Hippele flatly denied the allegation that he inflicted the injuries upon himself:

> Q.   Are you claiming that you inflicted your head injury and other injuries upon yourself and that the guards didn't prevent you from doing that?
>
> A.   Hum? No.

(Hippele Depo. p. 69).

The only record evidence in support of Hippele's claim is French's deposition, in which French stated that "on maybe two occasions" he saw Hippele bang his head against a plexi glass window and that Hippele did not appear to injure himself. (French Depo. p. 21). There is no evidence, however, that Hippele caused the injuries for which he sues by banging his head against the window.[4] Thus, the court will grant summary judgment on Count XI.

### e.   *Armor Has Carried Its Burden*

Hippele argues briefly that the court should deny Armor's motion, because Armor has failed to carry its initial burden of showing the absence of genuine issues of material fact. According to Hippele, Armor's motion is "deviod of any factual assertions" and, thus, Hippele "need not come forward with specific evidence to refute it." The court disagrees. To

---

[4] Furthermore, the Eleventh Circuit has made clear that "[a] prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990). Here, the evidence shows that Hippele's cell and person "had been stripped of all implements that might assist suicide." *Cagle v. Sutherland*, 334 F.3d 980, 989 (11th Cir. 2003). "These acts show a lack of deliberate indifference on the part of jail personnel and decreased the likelihood that [Hippele] would commit suicide" or injure himself." *Id.*

demonstrate that none of its policies or customs caused the alleged constitutional violations, Armor has cited, among other things, the deposition of Geo's and Armor's mental health administrators as well as the subcontract agreement between Armor and Geo. To demonstrate that there is insufficient evidence to support the claims that Hippele was placed in a restraint chair and beaten and that he inflicted the injuries upon himself, Armor has cited the materials on file, including Hippele's own deposition, in which Hippele conceded he has no memories of those events. Where, as here, the moving party "point[s] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden," the moving party has meets its initial burden under Rule 56. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Because Hippele has not come forward with sufficient evidence to support his claims, the grant of summary judgment is appropriate.

### 2. Negligence Claims

Counts VIII, X, and XII of the second amended complaint assert negligence claims pursuant to Florida law. "To prove a cause of action for negligence, a plaintiff must prove that the defendant had a legal duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff incurred damages as a result." *Gibbs v. Hernandez*, 810 So2.d 1034, 1036 (Fla. 4th DCA 2002). "A legal duty arises whenever a human endeavor creates a foreseeable risk of harm." *Downs v. Coastal Systems Int'l, Inc.*, 972 So.2d 258, 261 (Fla. 3d DCA 2008); *see McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 (Fla.1992). "The existence of a legal duty is a threshold question for the court." *Gibbs*, 810 So.2d at 1036.

Armor argues that summary judgment should be granted on the negligence claims because it owed Hippele no duty. The court agrees. Counts VIII, X, and XII of the second amended complaint allege that Armor "owed a duty of reasonable care to provide for the safety

of inmates in" the mental health unit.  *See* Second Am. Compl. ¶ 105, 122, 139.  This allegation is belied by the record.  As discussed *supra*, Armor played no role in the delivery of mental health services or security in the mental health unit and, consequently, owed no duty to inmates housed there.

Hippele contends that Armor had a non-delegable duty under Florida law to provide care for inmates in the mental health unit.  The court disagrees.  Under Florida law, "nondelegable duties are often said to arise out of the common law, statutes or regulations, *or contract*."  *Pope v. Winter Park Healthcare Group, LTD*, 939 So.2d 185, 188 (Fla. 5th DCA 2006) (emphasis in original).  Under common law, non-delegable duties usually arise "out of the performance of ultra-hazardous activity."  *Id.*  Here, Hippele has cited no case law, statute, or regulation suggesting that a private medical provider has a non-delegable duty to provide mental health services, nor is the court aware of any.  Additionally, the contract between the Sheriff's Office and Armor expressly permitted delegation.  Thus, the non-delegable duty doctrine does not apply here.

Moreover, as discussed *supra*, the record contains insufficient evidence to support the claim that Hippele himself caused the injuries for which he sues.  Nor is there sufficient evidence that his injures were caused when prison guards restrained and beat him.  Thus, Counts X and XII are without merit on the alternative ground that no reasonable juror could return a verdict in Hippele's favor on those Counts.

## CONCLUSION

Because the record lacks evidence that Armor violated Hippele's constitutional rights by executing an unlawful policy or custom, summary judgment will be entered for Armor on Hippele's § 1983 claims.  Because Armor had no duty to care for Hippele while he was housed

in the mental health unit, summary judgment will be entered for Armor on Hippele's negligence claims.  Even if the evidence indicated that an unlawful policy or custom of Armor caused the alleged constitutional violations, and even if Armor owed Hippele a duty of care, the court, in the alternative, would conclude that insufficient record evidence supports the claims that Hippele injured himself (Counts VIII and IX) or that guards restrained and beat him (Counts X and XI).

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Armor Correctional Health Services, Inc's motion for summary judgment [DE # 59] is **GRANTED**

2. Plaintiff Karl Hippele's request for oral argument [DE # 82] is **DENIED**.

3. Pursuant to Fed. R. Civ. P. 58(a), the court will enter final judgment by separate order.

**DONE** and **ORDERED** in Chambers in West Palm Beach, Florida, this 9th day of August, 2010.

                Kenneth A. Marra
                United States District Judge